Good morning, Your Honors. Deborah Levine, representing Mr. Feao, and apologizing for my voice, which is recovering, so I'll try to stand at the right distance. Maybe if you pull the microphone just a little closer to you. Oh, I can stand closer. That'll be good, thank you. Okay. If it please the Court, I would ask for a few minutes in response, and I'll watch the time. Rule 35 of the Federal Rules of Criminal Procedure addresses important issues of sentencing. In 2004, Section C and A switched places, and in Section C, the sentencing was defined as its oral announcement. This circuit in the Aguirre case, which the government decided, gave the three very important reasons that that was the appropriate decision, as opposed to after written judgment. The three reasons are that if a sentence is finalized at the time of the written judgment, it gives an opportunity for changes that the defendant and the government may not have the opportunity to address. The defendant is not present at that time, and that's a critical Sixth Amendment right. I'm sorry, counsel. Yes. So, my understanding is that Mr. Feao believes that the sentence is finalized at the time when Judge Tiger said it was final, is that right? No. So why wouldn't it be final in July, when he said on the record, this is the sentence, and then allowed more information about where he should designate Mr. Feao, which has nothing to do with the actual sentence? And as you know, district court judges can make all sorts of recommendations to the Bureau of Prisons as to where somebody goes, but the Bureau of Prisons doesn't have to take the recommendation at all. Yes, I understand that, Your Honor. But the judge himself, not at my request, not at the time, on page 225 of the excerpts, or 226, he said, I'm going to put this sentencing hearing over so that we'll have the benefit in this period between now, in July, and the further continued sentencing hearing to have information from the heart transplant cardiologist, Dr. Campbell, he mentioned her by name, and we will have the opportunity to get information from the jail where Mr. Feao was being held to see what his particular medical needs are. Those might be important additional pieces of information. In this case, Mr. Feao's medical needs were at the heart of the sentencing decision. And for Judge Tiger to say, and he was the one who initiated this continuance, to say that we invited, he wanted additional information so that he could make the most appropriate designation. I understand that that's not how many months' prison that he imposed, but the question is, in defining when the oral announcement is final, does it mean that when a judge himself, in continuing the case to get more information, whether it's about designation or whether it's about the sentence itself, and learns information or is given the opportunity to hear by my proffer, information that goes to the very lawfulness of his sentence. Since 2005 at the Booker, yes. I'm sorry. Why would the information go to the lawfulness of his sentence? Because the information that I proffered at the time of my motion to reconsider the sentence I'm sorry. I misunderstood. This is information you proffered. Yes, that's correct. Not the information that Judge Tiger was hoping to gather by the continuance. He was trying to get information about what recommendation to make as a placement. Well, not exclusively. What he said at the time in July And it would help me if we actually looked at the transcript. Yes. And I have that section. I have, yeah. Go ahead. Go ahead and get your copy, and I've got my copy here. And let's, you know, give me a page number and line number. 226. 226, okay. Line 21. Line 21. Okay. I am with you. And so Judge Tiger said, well, and actually this also, if we were to have another hearing in a week or so, it would give you the advantage of having Mr. Fayot in custody at Santa Rita, and Dr. Campbell or you could be in consultation with the medical staff there and see if there's any further information that you would like, you would want to provide to the Bureau of Prisons. So in saying that, I don't think he was precluding that he, too, could hear that the Bureau of Prisons could hear this information. He, yes, it could influence his recommendation or Mr. Fayot's advocacy as to placement, but if, as was the case, at the second sentencing hearing, he received information that undermined the very basis of his sentence. You know, I understand this argument. I'm not sure I buy it, but I do understand it, and because time is short, I want to put you on a slightly different track that I want you to address. Is it your position, and again, I don't mean to suggest an answer, I'm really asking for your view, that the judge's recommendation as to the placement is part of the sentence? The cases say that it's not, and I understand that it is separate. However, at the sentencing hearing, which was continued, when the judge received additional information, the question is whether or not this should be considered and given him the opportunity as the court in the Luna Acosta case in the Tenth Circuit. Nothing was entered on the docket, right? There was no order entered on the docket, or was there? Was there a minute order? Do you mean from the July hearing? Or the hearing we're looking at now? After he pronounced the esoteric? That's from July, and that was when he imposed 36 months. And was there an order entered at that? There's an order after every hearing just saying that the case is continued for further sentencing hearing. I don't have a copy of the order handy, but yes, there, but it's usually a minute order. There's always a minute order. Reflecting what happened at the hearing. Yes. But that would not normally be the order that would be used to transmit to the unit of formal sentencing. It's not the judgment. It's not the judgment, and that's – and that happens after the completion, both of any order of probation, any order imposing a prison term, any recommendation to the Bureau of Prisons as to where he should be placed, listening to his views on that. And here – And so, counsel, I just want to ask you one question before you turn it up, though. That you don't have, and Mr. Feo doesn't have any objection to where he was ultimately designated in the Bureau of Prisons. The objection really is as to what happens to him after he serves his sentence and goes to an ICE detention facility. Well, not – what – the issue here in front of the Court that I'm raising is whether or not Judge Tiger should have been given the opportunity, didn't lose jurisdiction, to modify or to alter or to change his sentence. Well, what is it that you – if you had the chance, what is it that you want? A new sentencing hearing. I know that. Oh. But what do you intend to ask for in a new sentencing hearing? What I ask – I will ask again for what I asked for at the July sentencing hearing, which is credit for time served. He had served approximately a year – I don't count the days, I don't have that number right in front of me – at the November hearing, and now he's done an additional one year. So, yes, that's what I would ask for. Well, then, how does that affect what – he's still going to be in ICE custody when he finishes, isn't he? He would be, but he would have an opportunity through his immigration lawyer to seek release for similar medical reasons and then have his full hearing. And he's a lawful U.S. resident, and he could then have a hearing with regard to – okay. I think I answered that, and so, thank you. Thank you. Good morning. May it please the Court, my name is Susan Gray and I represent the United States. The district court lacked jurisdiction to resentence, which my opponent has now admitted is what she was asking for. But even if it hadn't, to go to your point and your point, Judge Schroeder and Judge Ellis, is that the district court, even if it had considered this, did not have the authority in a separate civil immigration proceeding to give her the relief she seeks, which is the ability to challenge his deportation outside of custody. The district court at the time of sentencing knew that he faced that. But she wants that opportunity to come sooner. She wants that, yes. As she can ask for. And as she mentioned, she can ask to do that through the immigration proceedings. And one of the things that I think is important to remember, the district court, even if it considered this, had expressly rejected at the initial sentencing hearing, when it imposed the full sentence, the idea that this defendant was an appropriate candidate for time served. And the reason he did that is because after the initial very serious offense, he had proven himself incapable of ---- It sounds to me like you're arguing that it would be futile, but that's we don't get there if the Court has no jurisdiction, which is what Judge Tiger said. I don't have jurisdiction. Judges change their mind. And, you know, he might not have thought that. But you sort of skipped over quickly about the jurisdiction question. What exactly do you rely on for the jurisdictional argument? Your Honor, we rely legally and factually on the fact that sentence was imposed fully. It was the oral pronouncement of the sentence. Imposed is imposed. You know, words spoken in the ether might be enough. They might not be enough. You might need a written order. What is it that you rely on? What is the authority you rely on to say that when the judge says, I've pronounced sentence, that he divests himself of jurisdiction of changing it? Well, you just give me a case, statute. This should be easy, right? Your Honor, the Court specifically – I'll go first. I know what the judge said. I just want to know what's your authority for it. Because for some reason, Your Honor, I'm just blanking completely on the fact that it is the oral sentence. Well, grab your brief. Maybe it's in the brief. Your Honor, I'm not – This is not a trick question. I'm just asking sort of the most fundamental thing here. Judge Tiger said I don't have jurisdiction. He doesn't cite anything right there. And I want to know whether this is what you rely on. Your Honor, as the – as I believe my colleague pointed out, that the rules were amended, the Federal rules were amended to do a circuit split in 2004, in which I believe this circuit had talked about the fact that whether or not it was final at the time of the written judgment was entered or whether or not it was the oral. The rules of Federal criminal procedure were then amended. And to state that it is – It's in Rule 35? Yes, Your Honor. And so, counsel, perhaps maybe what you're relying on is 18 U.S.C. Section 3582, which states that a court may not modify a term of imprisonment once it's been posed. Thank you, Your Honor. For some reason, I'm completely blanking on this section, but I do know that it's there. I'm sorry. Is that what you're – is that what you're – Yes, Your Honor. Well, it doesn't tell us anything. I mean, imposed means what? Is imposed when he's saying it then what? I mean, why isn't it imposed when the judgment – when the judgment is entered? Your Honor, Rule 35C states that sentencing is defined as, in this rule, sentencing means the oral announcements of the sentence. That would be my authority, Your Honor. That when it was orally announced and it was completed, there were no outstanding terms of sentence. This is not like Luna Acosta, where there had not been an allocution, where there had not been an opportunity to make objections. All of those had concluded, and the court specific – the sentence of imprisonment, the sentence of supervised release, and the fine. So consistent – Do we have a case saying that? I'm just wondering. I don't know. Well, Your Honor, we're relying on the statute. And so far, the defendant has not – It's Rule 35C married to 18 U.S.C. 3582. Is that what it is? That's correct, Your Honor. Also, this Court's case is in Ochoa, Aguilar-Reyes, which is saying that it only – the court may modify a sentence only to the extent otherwise expressly permitted by statute or by Rule 35. And this Court, in Aguilar-Reyes and Sebelius, has – Was Ochoa a case where there was only an oral pronouncement? There was no written sentencing judgment? Your Honor, I'll note there that the court relied on 3582C. No, I understand. I understand. But the question is – As well as Rule 35. Was that a case involving no written judgment, no written sentencing judgment? There was no written. In that particular case, Your Honor, the court sentenced a pronounced sentence and the defendant was laughing at the court. And at that point, the court said, wait a minute, during – within the same hearing. And the distinction the court drew between a subsequent situation where there might be a break in the proceedings, which Luna Costa recognized, is that here in Ochoa, there was no break. It all happened within the same sentencing hearing. The difference here is that there was a break. Oral sentencing had been completely announced. Moreover, the court specifically put it over simply to reserve further information not as to sentencing, but as to designation. And in fact, I would submit, Your Honor, that the quote that the defense calibu gave you illustrates that it was actually being put over for information to be provided for the Bureau – to the Bureau of Prisons. In fact, at the conclusion of the sentencing hearing – And counsel, isn't it true that as part of the judgment and commitment order, which is a standard order that's used throughout the Federal system for district court judges, is that there is a section in there that has a designation portion. And the judge in the judgment and commitment order can designate, make a recommendation as to the designation. If that information is not available to the judge, Judge Tiger, in July, then you can't fill out the judgment and commitment order. However, that is not what controls as to whether the sentence has been imposed. Correct, Your Honor. Under Rule 35 tells us when it is imposed. But that sort of begs the question, right? I'm sorry, Your Honor. I mean, why? Why is what Judge Ellis just said correct? Because it came from Judge Ellis, Judge Kuczynski. Well, Judge Ellis is not controlling in the Ninth Circuit. She's authoritative. Your Honor, I'm not going to wade into that dispute. No, I'm just wondering. I mean, you know, if you say – if you say that – that if you can't enter a written judgment, then the oral pronouncement is enough. That may be enough. But, you know, I see Ochoa, it is Judge Navarro in dissent, taking the – in dissent, taking the position that you can't modify a sentence after it's been pronounced. But Judge Navarro was outvoted there, as I see it. To gather this provision, prohibit this judge from modifying a term of imprisonment after the sentence has been orally announced, except for reasons specifically there. But that's Judge Navarro in dissent. And as Your Honor mentioned, it is the dissent. Counsel, what about the appellate waiver issue? Your – I – the government believes that the waiver does apply because it specifically waives the ability to waive – to challenge not only the sentence, but any orders of the court. In addition, during the plea agreement also contains a specific explanation that his guilty plea will – may affect his immigration status. So there's no contention that this wasn't knowing and – and voluntary. And the only way the Court could set that aside is if there was a finding that there had been presented false information. This – the only information presented at the second designation hearing was basically an attempt to bolster mitigation arguments that the Court had already rejected. What had changed was what? The situation in the detention facilities? Your Honor, if I can address that, I have 39 minutes. Number one, ask to the Yates memo. That basically addressed safety and security. Very limited review of medication and medical facilities. And it was, in fact, it did not contradict anything. It did not even address immigration private contract facilities. Number two, defense counsel admitted at that designation hearing that the magazine articles had all been, you know, seven or eight months before the initial sentencing. And number three, the fact that he was going to go into ICE custody was known and noted by the PSR. It was noted by the defense counsel. In fact, she – he brought it up at the time of the sentencing hearing. Everyone knew that. But everyone knew that he was a New Zealand citizen, a legal permanent resident, and that that was looming out there. Okay. With the Court's permission, I'd like to ask that the Court – You know, I'm looking at the CHOA. CHOA was the same hearing. They say even after the Court pronounced a sentence, when it's the same hearing, the Court was able to modify the sentence. This is the laughing defendant. But the difference there, and I think it's a very important distinction, is that it was applying the break in the proceeding analysis. The Court found there hadn't been a break in the proceeding. And Luna Acosta is – addressed this. And, in fact, here the district court was – if the district court had done what the defense asked, they would have run afoul of Luna Acosta's original ruling. In fact, the judge in Luna Acosta got into trouble because there had been a break in the proceedings, and that – it was that third hearing. I'm sorry. Luna Acosta was the case where there was a break in the proceedings? There were three different sentencing hearings, Your Honor. If you will recall, there was the initial one, the second one where the Court put it over to a – before allocution and objection, and to wait until the sentencing guidelines changed, and then the third one that got the district judge in trouble for a lack of jurisdiction and warranted remersive. We don't want to get this district judge in trouble. Well, resulted in reversal, if I may put that a little more delicately, Your Honor. Yes, the judges love to be reversed. They sit around saying, gee, I hope that if I'm wrong, the circuit will benevolently correct me. Isn't that right? That is correct. Yes, there are. Okay. So tell me about what happened in the last hearing in Luna Acosta. There, the Court thought later, after a significant break, said, oh, you know, I'm going to go back and modify that sentence. And the Court, Tenth Circuit and Luna Acosta, said, no, you lost jurisdiction because the sentence was final. And here, the district court had it done, as defendant asked, and resentenced during that designation hearing, it would have done exactly what the Tenth Circuit said it couldn't do. The district court here was complying with the applicable, not only Tenth Circuit, but the law in this circuit, which says when there is a break in the proceeding and the sentence is final at that initial proceeding, the district court loses jurisdiction. On that basis, I would ask the Court to refer. Except for a very limited. Except for extremely limited circumstances. Okay. Thank you. Thank you. May I? Yes, go ahead. Take a minute. Just very briefly, Your Honor. I agree with you, Judge. Stay centered. I agree. There is no case that answers the question, when is the oral announcement of judgment final? What about Luna Acosta? Luna Acosta is the only case that clarifies three hearings in the. You only need one. You only need one case. Okay. The second one in Luna Acosta was requested by the defendant because supervised release, the law was changing in two weeks after the original sentencing hearing to eliminate supervised release in illegal reentry cases. The judge said yes, okay, fine, we'll put it over. Not only did the judge eliminate the supervised release condition of his previously imposed orally announced sentence, he also changed the number of months that the defendant was, he sentenced to the Bureau of Prisons. He lowered that number. Having a third thought sometime later, but without the presence of counsel, the defendant, or the government, he, in the written judgment, imposed his first 36-month sentence. And in the written judgment, that's what the court, the Tenth Circuit, said he had no jurisdiction to do. However, and most importantly for this case, at the second hearing, which was put over for further addressing sentencing issues, the oral announcement had not been completed. And that's what the court said. The court used the word draconian. I looked up the word draconian. I just know it from common usage. But it's actually a legal term that talks about extremeness in sentencing. And what the Luna Acoustic Court was talking about was exactly what is being addressed in my appeal here, this appeal, which is... But counsel, why do you believe that we can even be here and that there isn't an appellate waiver that was valid? There was no, there is never a waiver of this court determining its own Federal jurisdiction of the, and that is very well articulated in the Luna Acoustic case. I don't think there's any question that this court has. It's not just our jurisdiction. It is a question of the district court's jurisdiction. As the what? The district court, yes. Yes. But it's this, the law says that this court can always address issues of the appropriateness of jurisdiction, whether there's a waiver of the right to appeal the sentence, which is what was waived here, clearly. And that's not what this appeal is about. This is about whether the court had jurisdiction, whether it did in fact not complete based on important information. And I'll just conclude by saying the very lawfulness of the court's sentence came into question at this second sentencing hearing, defined by the district court judge as a sentencing hearing. Thank you. And therefore, I think it did not lose jurisdiction. Thank you. Okay. Thank you. Thank you.
judges: Schroeder, Kozinski, Ellis